**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MICHAEL TERRELL JOHNSON**                    **CIVIL ACTION**

**versus**                                                          **NO. 08-4208**

**N. BURL CAIN, WARDEN**                           **SECTION: "A" (3)**

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Michael Terrell Johnson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On October 2, 2003, he was convicted of second degree

murder in violation of Louisiana law.[1]  On October 8, 2003, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2]  On December 22, 2005, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3]  He did not seek review of that judgment by filing a writ application with the Louisiana Supreme Court.[4]

On November 21, 2006, petitioner filed with the state district court a *pro se* application for post-conviction relief.[5]  That application was denied on December 27, 2006.[6]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on April 4, 2007,[7] and the Louisiana Supreme Court on February 22, 2008.[8]

---

[1] State Rec., Vol. III of V, trial transcript, p. 380; State Rec., Vol. I of V, minute entry dated October 2, 2003; State Rec., Vol. I of V, jury verdict form.

[2] State Rec., Vol. III of V, transcript of October 8, 2003; State Rec., Vol. I of V, minute entry dated October 8, 2003.

[3] State v. Johnson, No. 2005 KA 0742 (La. App. 1st Cir. Dec. 22, 2005) (unpublished); State Rec., Vol. V of V.

[4] See Rec. Doc. 7, p. 4, answer to question 11(e); see also Rec. Doc. 7, supporting memorandum, p. 2.

[5] State Rec., Vol. V of V.  Petitioner's counsel filed another post-conviction application on January 24, 2007, which was denied as repetitive on January 25, 2007.  State Rec., Vol. V of V.

[6] State Rec., Vol. V of V, Order dated December 27, 2006.

[7] State v. Johnson, No. 2007 KW 0284 (La. App. 1st Cir. Apr. 4, 2007) (unpublished); State Rec., Vol. V of V.

[8] State ex rel. Johnson v. State, 976 So.2d 1279 (La. 2008) (No. 2007-KW-1006); State Rec., Vol. V of V.

On July 15, 2008, petitioner filed with the state district court a "Motion to Vacate and Set Aside Invalid Convictions and Sentences."[9] That motion was denied on July 22, 2008.[10]

On July 23, 2008, petitioner filed the instant federal application for *habeas corpus* relief claiming that he received ineffective assistance of counsel and was denied a fair trial.[11]

On April 24, 2009, the undersigned issued a report recommending that petitioner's federal application be dismissed as untimely.[12] Petitioner objected to that recommendation, arguing that his federal application should not be dismissed on that basis because he did not receive timely notice of the Louisiana Supreme Court's decision denying relief in the state post-conviction proceedings.[13] Based on that allegation, the United States District Judge found that petitioner's federal application was timely filed and referred this matter to the undersigned for consideration of petitioner's claims on the merits.[14]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact,

---

[9] State Rec., Vol. V of V.

[10] State Rec., Vol. V of V, Order dated July 22, 2008.

[11] Rec. Doc. 7.

[12] Rec. Doc. 15.

[13] Rec. Doc. 16.

[14] Rec. Doc. 17.

questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the

claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481,

485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses
> have independent meaning. A federal habeas court may issue the
> writ under the "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or if it decides
> a case differently than we have done on a set of materially
> indistinguishable facts. The court may grant relief under the
> "unreasonable application" clause if the state court correctly
> identifies the governing legal principle from our decisions but
> unreasonably applies it to the facts of the particular case. The focus
> of the latter inquiry is on whether the state court's application of
> clearly established federal law is objectively unreasonable, and we
> stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an
> unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court

will give deference to the state court's decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

<u>Facts</u>

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

on this case as follows:

The crime occurred on April 9, 2002, on East Stovall Street in Hammond, Tangipahoa Parish. The defendant, riding as a passenger in his girlfriend's vehicle, which was being driven by Kenyatta Bailey (also known as "Tank"), shot and killed Kedrick Jackson while he was standing near the street. The following day, the defendant turned himself in to the Hammond Police Department and gave a taped confession to Officer Chuck Muse and Detective Michael Thompson. According to his confession, on or around April 6, 2002, the defendant was playing a game of "tunk"[FN1] with several people, including Kedrick. After the defendant won $60.00 from Kedrick, Kedrick struck the defendant in the mouth, pulled a pistol on him and took over $300.00 from him. Angered by this, the defendant told his friends, "Let's run him down and get him." The defendant and his friends drove around that day but could not find Kedrick. Several days later while the defendant was riding in his girlfriend's "little gray car" on East Stovall Street, Kedrick approached the vehicle, pulled a pistol, and threatened to kill the defendant. The defendant, who was on the passenger's side and carrying a handgun, shot several times, hitting Kedrick twice. The defendant stated that he was scared and he thought Kedrick was going to kill him.

[FN1] "Tunk" is a card game involving gambling.

Quiera Harland, a seventeen-year-old Hammond High School student who lived at 114 East Stovall Street, witnessed the shooting. She testified that she was standing outside talking with Kedrick and several other people when a car turned down the street where they were gathered. As the car went past them without stopping, a man, later identified by Quiera as the defendant, leaned out of the passenger side window and began firing a handgun. Kedrick ran, but Quiera remained where she was. After the car drove away, Quiera went to the back of a nearby house and found Kedrick lying on the ground. He had been shot. Quiera further testified that prior to the shooting, no one in the group, including Kedrick, said anything to anyone in the car and that Kedrick did not approach the car.

– 5 –

Demarreao Pines claimed to have been at the scene when the shooting began.[FN2]  He testified that he was playing in the "tunk" game when he saw Kedrick pull out a pistol and take the defendant's money and wallet.  On the day of the shooting, Demarreao was standing outside of his aunt's residence on East Stovall Street when he saw Kenyatta Bailey driving the defendant's girlfriend's car, a blue four-door Buick, down the street.  The defendant was in the passenger's seat.  They drove toward Demarreao and, as Demarreao began walking toward the vehicle, he saw Kedrick approach the vehicle with a pistol in his hand.  There was shouting and cursing between Kedrick and the defendant, and Demarreao heard the defendant ask for his I.D.  As Demarreao ran away, he heard gunshots.  He did not see who fired their weapon or who shot first.  When asked on cross-examination whether he had any idea whether Kedrick fired the gun he allegedly was holding, Demarreao responded, "No, ma'am.  But I heard shots."

> [FN2] Demarreao testified that he was currently incarcerated, having violated parole on an aggravated battery sentence.

Detective Avery Rohner of the Hammond Police Department testified that he and other police officers at the scene recovered spent bullets, or slugs, from nearby residences where the shooting occurred.  One slug was found at 110 East Stovall Street, and another slug was found at 110 ½ East Stovall Street, a blue and white trailer.  Kedrick was found at the back of 112 East Stovall Street.

Lieutenant Paul Miller of the Hammond Police Department testified that a sawed-off shotgun in two separate pieces and Kedrick's cap were found near the crime scene.  Lieutenant Miller also recovered a Ruger .22 caliber revolver from Patrick Brown, who told Lieutenant Miller that he had picked up the gun which was near Kedrick after he got shot.  Lieutenant Miller also collected Kedrick's clothes from the hospital and assisted Detective Dennis Pevey in photographing Kedrick's wounds.

Detective Brian McCormick of the Hammond Police Department testified that he was the lead investigator in the shooting incident.  He testified that neither of the two weapons found at the scene – the Ruger .22 caliber revolver and the sawed-off shotgun – were sent to the crime lab for testing.  When asked why the weapons were not tested, Detective McCormick explained they did  not feel it was necessary because the slugs retrieved at the scene did not match

either of the weapons. He also testified that the Ruger .22 caliber, when it was delivered to their possession, had six live rounds in the cylinder and appeared to have been unfired.[FN3] The caliber weapon used to kill Kedrick was a .38.

> [FN3] At the motion to suppress hearing held prior to trial, when Detective McCormick was asked, "Was the weapon that you found near the victim, had it been discharged?" he replied, "No."

Detective McCormick compiled a photographic line-up of six subjects, consisting of the defendant and five other people of similar age and appearance to the defendant. On April 17, 2002, Detective McCormick went to Quiera's high school and, upon showing her the photographic line-up, she identified the defendant as the shooter.

Dr. Michael DeFatta, forensic pathologist and the chief deputy coroner for St. Tammany Parish, performed the autopsy on Kendrick. The manner of death was ruled a homicide. There were two gunshot wounds, one in the lower back and one in the middle of the back. The bullet that entered the middle back was not lethal. The bullet that entered the right lower back was lethal, passing through the right lung and damaging the diaphragm and heart. Dr. DeFatta could not determine which wound Kedrick received first. There were no exit wounds. The wounds were from back to front, and the entries and paths of the bullets were consistent with Kedrick being bent over, possibly running or falling, when he was shot.[15]

<u>Ineffective Assistance of Counsel</u>

Petitioner claims that his trial counsel was ineffective. Petitioner bears the burden of proof when asserting such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).

---

[15] <u>State v. Johnson</u>, No. 2005 KA 0742, at pp. 2-5 (La. App. 1st Cir. Dec. 22, 2005) (unpublished); State Rec., Vol. V of V.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Id. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the

relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to a state court decision denying such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that neither of those conditions is met in the instant case and that, therefore, this federal court should defer to the state courts' rulings rejecting these claims.

Petitioner first claims that his counsel was a civil practitioner not sufficiently experienced to try a criminal case. In the post-conviction proceedings, the state district court rejected that claim, holding:

> Mover was represented at trial by retained counsel, Albert Huddleston. The first contention involves a statement made by Mr. Huddleston following the close of the State's case in chief. At that point, counsel moved for a directed verdict. The Court explained that there was no such procedure in criminal cases. At that point, Mr. Huddleston stated that he "... was more comfortable in a civil jury trial environment than in a criminal one." (Transcript pg. 331) Thus, the statement does not say that Mr. Huddleston was "incompetent" to handle criminal cases nor did the motion for the directed verdict

necessarily imply incompetency.  Accordingly, this contention lacks merit.[16]

Petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[17] and the Louisiana Supreme Court.[18]

The mere fact that a licensed attorney lacks criminal law experience is not alone sufficient to support an ineffective assistance of counsel claim.  "Every experienced criminal defense attorney once tried his first criminal case. ...  The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation."  United States v. Cronic, 466 U.S. 648, 665 (1984); Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("[A]n attorney can render effective assistance of counsel even if he has had little prior experience in criminal cases."); see also Bell v. Epps, Civ. Action No. 3:04CV212-B, 2008 WL 2690311, at *10 (N.D. Miss. June 20, 2008) ("The Sixth Amendment does not require seasoned counsel, it requires effective counsel."); United States v. Ferneau, Nos. 1:03-cr-046 and 1:06-cv-070, 2007 WL 430208, at *3 (D.N.D. Feb. 2, 2007) ("It is well-established that simply claiming counsel was inexperienced is insufficient to show ineffective assistance."); United States v. Brady, No. 4:05-cr-023, 2006 WL 3498558, at *3 (D.N.D. Dec. 1, 2006).  Because petitioner has not demonstrated that his counsel's inexperience actually

---

[16] State Rec., Vol. V of V, Order dated December 27, 2006, at p. 1.

[17] State v. Johnson, No. 2007 KW 0284 (La. App. 1st Cir. Apr. 4, 2007) (unpublished); State Rec., Vol. V of V.

[18] State ex rel. Johnson v. State, 976 So.2d 1279 (La. 2008) (No. 2007-KW-1006); State Rec., Vol. V of V.

resulted in representation which fell below the level required by the Sixth Amendment, the state

court's decision denying this claim was neither contrary to nor involved an unreasonable application

of clearly established federal law.

Second, petitioner claims that his counsel was ineffective in failing to call Patrick

Brown and Kenyatta Bailey to testify at trial. On direct appeal, petitioner asserted this claim with

respect to the failure to call Brown. The Louisiana First Circuit Court of Appeal rejected that claim,

finding that there was no reasonable probability that the result of the proceeding would have been

different if Brown had been called to testify.[19] In the post-conviction proceedings, petitioner then

reasserted the claim and added the contention that counsel was also ineffective in failing to call

Bailey to testify. The state district court likewise rejected the claim, holding:

> Mover's second contention involves his attorney's failure to
> call key witnesses in his defense, specifically, Patrick Brown and
> Kenyatta Bailey. Mover contends that Bailey would have testified
> that Mover was in fear of his life and that the victim was armed at the
> time of the incident, and that Brown removed a firearm from close
> proximity to the victim's body following the incident. Mover
> contends that Bailey would have testified that he was driving the
> vehicle occupied by Mover, and that the victim approached the
> vehicle while armed, threatening Mover prior to the shooting.
> This argument was raised in Mover's prior appeal, and
> rejected by the First Circuit Court of Appeal (2005-KA-0742),
> specifically with respect to the testimony of Patrick Brown. Further,
> it appears that Brown's whereabouts were unknown at the time the
> trial commenced, such that he would have been unavailable to call as
> a witness. (Transcript pages 206 and 213). Further, the suggestion
> as to Bailey's testimony was likewise inferentially rejected in the
> ruling on appeal. Mover tried to contend that he was in fear of his
> life and shot the victim in self-defense. However, the testimony and
> Mover's own confession indicate that Mover was actually searching

---

[19] State v. Johnson, No. 2005 KA 0742, at pp. 9-10; State Rec., Vol. V of V.

down the victim at the time of the incident, and the physical evidence that the victim was shot in the back belies a contention that he was approaching the vehicle in which Mover was riding, while armed, and threatening Mover. Therefore, this argument lacks merit.[20]

Petitioner's related writ applications were also denied by the Louisiana First Circuit Court of Appeal[21] and the Louisiana Supreme Court.[22]

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Id. (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)). Petitioner's claim therefore necessarily fails because he has presented no evidence whatsoever, such as affidavits from Brown and Bailey, showing that they would have testified at trial in a manner beneficial to the defense. Accordingly, the state court's decision denying this claim was neither contrary to nor involved an unreasonable application of clearly established federal law.

---

[20] State Rec., Vol. V of V, Order dated December 27, 2006, at pp. 1-2.

[21] State v. Johnson, No. 2007 KW 0284 (La. App. 1st Cir. Apr. 4, 2007) (unpublished); State Rec., Vol. V of V.

[22] State ex rel. Johnson v. State, 976 So.2d 1279 (La. 2008) (No. 2007-KW-1006); State Rec., Vol. V of V.

Third, petitioner claims that his counsel was ineffective in failing to adequately cross-examine the state's eyewitness at trial. In the post-conviction proceedings, the state district court rejected that claim, holding:

> Mover's next contention is that his attorney failed to cross examine the State's eyewitness. The transcript (pages 285 and 286) indicates that his attorney did briefly cross examine Quiera Harland, the eyewitness. There was no way to know whether additional questioning would have elicited any information favorable to the defense, as opposed to reinforcing the most powerful testimony for the prosecution. On direct, Ms. Harland testimony was quite damning to the defense, describing a wild scene of a drive by shooting, and the victim's effort to flee prior to his being shot. It is therefore logical to conclude that an appropriate defense strategy would be not to revisit or emphasize this testimony. Accordingly, the Court finds this contention without merit.[23]

Petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[24] and the Louisiana Supreme Court.[25]

"The decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F.Supp.2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); see also Parker v. Cain, 445 F.Supp.2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such tactical matters through the

---

[23] State Rec., Vol. V of V, Order dated December 27, 2006, at p. 2.

[24] State v. Johnson, No. 2007 KW 0284 (La. App. 1st Cir. Apr. 4, 2007) (unpublished); State Rec., Vol. V of V.

[25] State ex rel. Johnson v. State, 976 So.2d 1279 (La. 2008) (No. 2007-KW-1006); State Rec., Vol. V of V.

distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. <u>Strickland</u>, 466 U.S. at 689. Moreover, it is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." <u>Id</u>.

In the instant case, this Court cannot say that counsel's failure to aggressively challenge Harland, at the risk of further highlighting her testimony and of possibly alienating the jury by appearing to badger a young witness, constituted deficient performance. Further, in light of the considerable evidence of his guilt, petitioner clearly has not shown that the result of the proceeding would have been different if only defense counsel had more aggressively cross-examined Harland. Accordingly, the state court's decision denying this claim was neither contrary to nor involved an unreasonable application of clearly established federal law.[26]

---

[26] In its response in this proceeding, the state notes that it appears that petitioner may also now be attempting to assert a claim that his counsel was ineffective for failing to interview Harland prior to trial. If that is indeed petitioner's intention, then, as the state notes, that claim is unexhausted. Although petitioner made a similar allegation in his Louisiana Supreme Court application, the claim is nevertheless unexhausted because it was not initially raised in the state district court. <u>See</u> <u>Mercadel v. Cain</u>, 179 F.3d 271, 275 (5th Cir. 1999); <u>Stevenson v. Cain</u>, Civ. Action No. 06-1244, 2006 WL 2850167, at *2 n.18 (E.D. La. Oct. 4, 2006). Further, the fact that petitioner properly exhausted one or more ineffective assistance claims does not constitute exhaustion of an ineffective assistance claim now based on a different theory. <u>See</u> <u>Ogan v. Cockrell</u>, 297 F.3d 349, 358 (5th Cir. 2002); <u>Burns v. Estelle</u>, 695 F.2d 847, 849-50 (5th Cir. 1983); <u>Stevenson</u>, 2006 WL 2850167, at *2 n.18. This Court cannot grant relief on such an unexhausted claim unless the state affirmatively waives the exhaustion requirement. <u>Green v. Quarterman</u>, 312 Fed. App'x 635, 640 (5th Cir. 2009); <u>Mercadel</u>, 179 F.3d at 276-77. Here, the state clearly does not waive the exhaustion requirement with respect to this claim. Rec. Doc. 14, p. 8.

Moreover, in any event, petitioner has presented no evidence whatsoever in support

Fourth, petitioner claims that his counsel was ineffective in failing to move for a continuance. In the state post-conviction proceedings, the state district court rejected that claim, holding:

> Mover next contends that his counsel was ineffective in failing to move for a continuance in order to obtain the presence of favorable witnesses, presumably, Bailey and Brown. As set forth above, the argument that his testimony if given would have changed the outcome of the trial was previously rejected on appeal. Further, at least one of these witnesses' whereabouts were unknown. Mover suggests that the Court offered a continuance for this purpose. The record reflects no such offer, but rather an offer of assistance to expedite a subpoena, at which time it was revealed that the witness' whereabouts were unknown. Therefore, this contention is without merit.[27]

Petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[28] and the Louisiana Supreme Court.[29]

A decision on whether to seek a continuance is a strategic choice generally accorded great deference. See, e.g., McVean v. United States, 88 Fed. App'x 847, 849 (6th Cir. 2004); Moore

---

of his bald assertion that defense counsel failed to interview Harland. Therefore, this claim necessarily fails even if considered on the merits. A federal court has the authority to deny *habeas* claims on the merits, regardless of whether petitioner exhausted state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civil Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).

[27] State Rec., Vol. V of V, Order dated December 27, 2006, at p. 2.

[28] State v. Johnson, No. 2007 KW 0284 (La. App. 1st Cir. Apr. 4, 2007) (unpublished); State Rec., Vol. V of V.

[29] State *ex rel.* Johnson v. State, 976 So.2d 1279 (La. 2008) (No. 2007-KW-1006); State Rec., Vol. V of V.

v. Casperson, 345 F.3d 474, 490 (7th Cir. 2003); Brooks v. Cain, Civ. Action No. 06-1869, 2007 WL 2990935, at *13 (E.D. La. Oct. 11, 2007).  As previously noted, courts employ a strong presumption that counsel's decisions on such tactical matters fall within the wide range of reasonable assistance and are therefore not lightly second-guessed.  Moreover, in any event, this Court need not determine whether counsel performed deficiently in failing to seek a continuance because petitioner clearly cannot establish that prejudice resulted for at least two reasons.

First, counsel is not ineffective for failing to request a continuance unless it is reasonably probable that the trial court would have granted that request.  See United States v. Flores-Ochoa, 139 F.3d 1022, 1024-25 (5th Cir. 1998).  Such a reasonable probability does not exist in the instant case.  It is unlikely that the Court would have granted a continuance to obtain the presence of Brown because, as noted, his whereabouts were unknown.  Further, a continuance was apparently unnecessary to secure the presence of Bailey.  Petitioner contends in his federal application that Bailey had been transported to court along with witness Demarreao Pines.[30]  Therefore, Bailey could have been called to testify at trial if counsel had elected to do so.

Second, petitioner must also show that *if* a continuance had been granted and the presence of Bailey and Brown had been obtained, there is a reasonable probability that "the result of the proceeding would have been different."  See Strickland, 466 U.S. at 694.  This requires a showing that Bailey and Brown would have testified in a manner favorable to the defense.  As previously noted, petitioner has presented no evidence that their testimony at trial would have been favorable.

---

[30] Rec. Doc. 7, supporting memorandum, pp. 11-12.

Accordingly, for all of the foregoing reasons, petitioner has failed to demonstrate that the state court's decision denying this claim was contrary to or involved an unreasonable application of clearly established federal law.

Petitioner next claims that his counsel was ineffective when he admitted petitioner's guilt at trial. In the post-conviction proceedings, the state district court rejected that claim, holding:

> Mover's next contention is that his counsel was ineffective for "admitting his guilt to the jury". This is a misstatement of the nature of the comment. In his opening statement to the jury Mr. Huddleston stated that Mover did in fact shoot and kill the victim. However, his argument and statement was that this was done in self-defense and in fear of the victim. This was the entire defense strategy employed at trial an[d] on appeal. It was not an admission of guilt but rather an acknowledgment that the Defendant did not challenge the fact that he had shot and killed the victim (which he could hardly do in the face of his prior confession, which also urged self-defense). Therefore, the Court holds this contention without merit.[31]

Petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[32] and the Louisiana Supreme Court.[33]

This Court has reviewed both defense counsel's opening statement and closing argument.[34] At no point in either that statement or argument did defense counsel explicitly or

---

[31] State Rec., Vol. V of V, Order dated December 27, 2006, at pp. 2-3.

[32] State v. Johnson, No. 2007 KW 0284 (La. App. 1st Cir. Apr. 4, 2007) (unpublished); State Rec., Vol. V of V.

[33] State ex rel. Johnson v. State, 976 So.2d 1279 (La. 2008) (No. 2007-KW-1006); State Rec., Vol. V of V.

[34] State Rec., Vol. II of V, trial transcript, pp. 220-21; State Rec., Vol. III of V, trial transcript, pp. 357-62.

implicitly concede petitioner's guilt. Rather, as noted above, the point of counsel's opening statement and closing argument was that petitioner was *not guilty* because he acted in self-defense. In that petitioner's underlying allegation is incorrect as a matter of fact, his claim necessarily fails. Accordingly, the state court's decision denying this claim was neither contrary to nor involved an unreasonable application of clearly established federal law.

Lastly, petitioner claims that his counsel was ineffective in failing to subpoena an expert in the field of voice analysis. In the post-conviction proceedings, the state district court rejected that claim, holding:

> Mover contends that his attorney was ineffective for failing to call an expert witness to state whether the voice heard on the tape recording of the confession "was or was not" Mover's voice. Since Mover acknowledges the possibility in this argument that the voice was his, this contention lacks merit. Further, the confession basically tracks the conduct to which Mover presently admits, i.e. the shooting, but in fear of his life.[35]

Petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[36] and the Louisiana Supreme Court.[37]

This claim fails for at least two reasons. First, to prove his claim, petitioner must show "what results the scientific tests would have yielded" and that those results would in fact have been favorable to him. See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). He has not made

---

[35] State Rec., Vol. V of V, Order dated December 27, 2006, at p. 3.

[36] State v. Johnson, No. 2007 KW 0284 (La. App. 1st Cir. Apr. 4, 2007) (unpublished); State Rec., Vol. V of V.

[37] State *ex rel.* Johnson v. State, 976 So.2d 1279 (La. 2008) (No. 2007-KW-1006); State Rec., Vol. V of V.

those showings in this case. Second, in analyzing an ineffective assistance of counsel claim, "[t]actical and strategical decisions of counsel if based on informed and reasoned practical judgment will not be second-guessed." Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997); see also Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999). In this case, there is no reason to believe, and petitioner does not even in fact seriously suggest, that it was not his voice on the recording. Therefore, there was nothing to be gained by securing such a test, especially since, as the state court noted, the statement was entirely consistent with petitioner's defense at trial. Accordingly, the state court's decision denying this claim was neither contrary to nor involved an unreasonable application of clearly established federal law.[38]

## Obstruction of Justice

Lastly, petitioner claims that investigator Paul Miller obstructed justice by tampering with evidence and failing to have the evidence properly tested. The state correctly notes in its response that this claim is unexhausted. Nevertheless, because the claim is patently meritless, the undersigned recommends that it simply be denied on that basis in the interest of judicial economy.[39]

---

[38] To the extent that petitioner may be contending that counsel was also ineffective in failing to call some other type of expert, that contention is likewise meritless because petitioner has not shown that the expert would have discovered or revealed any evidence whatsoever which was beneficial to the defense.

[39] As previously noted, a federal court has the authority to deny *habeas* claims on the merits, regardless of whether petitioner exhausted state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civil Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).

With respect to this claim, petitioner notes that Lt. Paul Miller recovered the victim's .22 caliber Ruger from Patrick Brown. Petitioner contends that Miller tampered with that evidence and should have sent it to the crime lab for testing.

First, there is no evidence whatsoever that Miller "tampered" with the Ruger after retrieving and securing it. Although he removed the gun's cylinder for safety reasons,[40] there is no indication that he tampered with either the gun or the cylinder or in any way damaged the evidence.

Second, petitioner opines that Miller should have sent the Ruger and the shotgun to the crime lab because testing might have revealed evidence that would have been beneficial to the defense. However, the police determined that testing of those guns was unnecessary for *their* purposes because neither of those guns matched the caliber of the slugs found at the scene or recovered from the victim's body.[41] Further, the police were under no constitutional duty to test the guns simply because such tests might have benefitted the defense. See Arizona v. Youngblood, 488 U.S. 51, 58-59 (1988) (holding that the Due Process Clause is not violated simply because "the police fail to use a particular investigatory tool"); Dann v. Rabideau, No. 9:05-CV-0969, 2008 WL 2704900, at *5 (N.D.N.Y. July 7, 2008) ("Prosecutors have a constitutional duty to disclose exculpatory evidence to the defense, however, there is no constitutional duty to create exculpatory evidence on behalf of a defendant, nor to perform any particular tests.") (citations, quotation marks, and brackets omitted). If defense counsel believed such testing would be helpful to his case, it was up to him to request it.

---

[40] State Rec., Vol. II of V, trial transcript, p. 258.

[41] State Rec., Vol. II of V, trial transcript, pp. 293-94.

Third, petitioner complains that Brown should have been arrested for obstruction of justice for removing the Ruger from the crime scene. Whether Brown should have been arrested has no bearing on this proceeding. Even if Brown committed a crime by removing the gun, that fact that he was neither arrested nor prosecuted for that crime in no way affects the validity of petitioner's conviction.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Michael Terrell Johnson** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this thirteenth day of July, 2009.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**